UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER PARKER,<br><br>Defendant. | No. 2:97-cr-00202-TLN-EFB<br><br>**ORDER** |

This matter is before the Court on Defendant Christopher Parker's ("Defendant") Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(C)(1)(A)(i). (ECF No. 465.) The Government filed an opposition. (ECF No. 468.) Defendant filed a reply. (ECF No. 469.) For the reasons set forth below, the Court GRANTS Defendant's motion.

///
///
///
///
///
///
///
///

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

On October 25, 1999, a jury found Defendant guilty of conspiracy in violation of 18 U.S.C. § 371 (count 1), four counts of armed bank robbery in violation of 18 U.S.C. §§ 2113(a), (d), and 2 (counts 2, 4, 6, 8), and four counts of use of a firearm in violation of 18 U.S.C. § 924(c)(1) and 2 (counts 3, 5, 7, 9). (See ECF Nos. 254, 283.) On January 28, 2000, the Court sentenced Defendant to an 888-month term of imprisonment and entered judgment. (ECF Nos. 275, 283.) In 2001, the Ninth Circuit found errors in the guideline calculations and remanded for resentencing. (*Id.*; *see also* ECF No. 348.) On remand, this Court imposed a 60-month term on count 1, an 87-month term on counts 2, 4, 6, and 8 to run concurrently with count 1, a consecutive 60-month term on count 3, and consecutive 240-month terms on each of counts 5, 7, and 9, for an 867-month term of imprisonment in total. (ECF No. 464 at 2; *see also* ECF Nos. 367–368.)

On January 19, 2021, Defendant filed the instant motion for release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (ECF No. 465.) Defendant argues his sentence should be reduced to time served for the extraordinary and compelling reasons presented by his case, specifically his youth at the time of the offenses, his first-time offender status, the disproportionate effect of the law that required the "stacking" of his sentences based on the 18 U.S.C. § 924(c) ("§ 924(c)") convictions, the "enormous disparity" between the sentence he actually received and the sentence that would be imposed today, and his "exemplary" efforts toward rehabilitation. (*See* ECF No. 465.) In opposition, the Government argues Defendant's argument about a grossly disproportionate sentence resulting from the "stacking" of his § 924(c) convictions fails because "the compassionate release statute does not provide for relief based on non-retroactive changes to the law."[1] (ECF No. 468 at 3.)

To date, Defendant has served approximately 288 months (or 24 years) of his 867-month sentence, and he has earned an additional 40 months in good conduct time credits. (ECF No. 465

---

[1] The Government also argues Defendant's sentence "was not the product of stacked § 924(c) convictions," but fails in its opposition brief to any explain further. (*See* ECF No. 468 at 3.) Defendant asserts in his reply brief that "[t]his argument is plainly contradicted by the facts," noting "Judge Karlton's sentencing decision was a product of the mandatory stacked [§] 924(c) statute and the then-mandatory Guidelines system." (ECF No. 469 at 2.) The Court agrees with Defendant.

at 13.) His current anticipated release date is December 11, 2058. (ECF No. 468 at 2.)

**II.    ANALYSIS**

      A.    <u>Exhaustion</u>

Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824–25 (2010). The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A) sets forth a rare exception to the general rule. However, relief under 18 U.S.C. § 3582(c)(1)(A) is only available

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ["BOP"] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

18 U.S.C. § 3582(c)(1)(A).

In the instant case, it is undisputed that Defendant has met the threshold exhaustion requirement. Defendant made a request to the warden on April 23, 2020. (ECF No. 465-5 at 2–6; ECF No. 468 at 4.) The warden denied Defendant's request on April 29, 2020. (ECF No. 465-5 at 7.) Because more than 30 days have elapsed since receipt of Defendant's request, Defendant has met the exhaustion requirement. *See* 18 U.S.C. § 3582(c)(1)(A).

      B.    <u>Extraordinary and Compelling Reasons</u>

Despite having met the exhaustion requirement, Defendant is eligible for compassionate release only if he can demonstrate there are "extraordinary and compelling reasons" for a sentence reduction and such a reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Ninth Circuit recently held that "the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, No. 20-10245, 2021 WL 1307884, at *4 (9th Cir. Apr. 8, 2021). The Ninth Circuit explained "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* Accordingly, the Court relies on § 1B1.13 herein as persuasive authority. This also means the list of examples of extraordinary and compelling reasons in § 1B1.13 (*i.e.*, medical condition of the defendant, age of

3

the defendant, family circumstances, and other reasons) is not exclusive. *Cf. United States v. Jones*, 482 F. Supp. 3d 969, 976 (N.D. Cal. 2020) (finding the examples in § 1B1.13 not exclusive prior to Ninth Circuit guidance); *United States v. Quinn*, 467 F. Supp. 3d 824, 830–31 (N.D. Cal. 2020) (citing *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681–82 (N.D. Cal. 2019)) (same).

Were Defendant to be sentenced for identical criminal conduct today with an equivalent criminal history, instead of his 867-month sentence, Defendant may have received a sentence of 327 months (or 27.25 years) instead.[2] Defendant has been in custody since 1997, which means he would be released approximately sometime in 2024. With his 40 months in good conduct time credits, this date would be moved up to sometime in 2021. Instead, Defendant still has 579 months (or 48.25 years) remaining on his sentence, with an anticipated release date still approximately 37 years away. Accordingly, the Court finds this disparity to be an extraordinary and compelling reason for a sentence reduction.

The reasons for this disparity are two significant changes in federal sentencing law. First, prior to amendment by the First Step Act, a second or subsequent count of conviction under § 924(c) triggered not only a higher mandatory minimum penalty, but also a mandatory "stacking" of sentences for each count of conviction. *Quinn*, 467 F. Supp. 3d at 827 (N.D. Cal. 2020) (citing *Deal v. United States*, 508 U.S. 129 (1993)); *Jones*, 482 F. Supp. 3d at 978 ("[A] sentencing court was required to impose a minimum prison sentence of 5 years for a first § 924(c) conviction followed by 20 years for a 'second or subsequent' § 924(c) conviction . . . [which] were also required to be served consecutively."). Section 403(a) ("§ 403") of the First Step Act eliminated the practice of "stacking" by amending § 924(c) to require the higher penalty for a "second or subsequent count of conviction" to be applicable only if the defendant has a prior § 924(c) conviction that has become final. First Step Act, Pub. L. No. 115-391, Title IV, § 403, 132 Stat. 5221–22 (2018). Congress did not make this amendment retroactive. *See id.* § 403(b), 132 Stat. at 5222. Second, the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005),

---

[2] This assumes Defendant would still have received a sentence at the low-end of the guidelines range, as he did in 2001.

4

made the U.S. Sentencing Guidelines (the "Guidelines") advisory rather than mandatory. This means the Court did not have the discretion to impose a sentence outside the prescribed range, even if warranted by the § 3553(a) factors, at the time Defendant was first sentenced in 2000 and at the time he was re-sentenced in 2001.

The Government makes three distinct arguments. First, it argues § 403(b) provides that § 403(a) does not apply retroactively to a sentence imposed prior to the enactment of the First Step Act, as is the case here. (ECF No. 468 at 6.) The Government cites another district court within the Ninth Circuit that held "the non-retroactive change of the amended [§] 924(c) does not amount to an extraordinary and compelling reason for sentence modification." (*Id.* at 6 (citing *U.S. v. Andrews*, No. 3:93-cr-00075-HDM, 2020 WL 7714708, at *3 (D. Nev. Dec. 29, 2020)).) Second, the Government argues the Sentencing Commission's policy statements are binding on the courts, as the Ninth Circuit "continues to cite § 1B1.13 as relevant authority in this context." (*Id.* at 9.) However, the Government's opposition brief was filed prior to *Aruda*, in which the Ninth Circuit explicitly stated § 1B1.13 is no longer binding. 2021 WL 1307884, at *4. This argument therefore has no merit. Finally, the Government maintains "the amended [§] 924(c) sentencing regime is not a basis for compassionate release," as it asks the Court "to substitute in place of the parties its own assessment of the propriety of the sentence and to speculate about the sentencing judge's departure from the Guidelines." (*Id.* at 11.)

With respect to the Government's first argument, a number of district courts in California have already rejected arguments by the Government that § 403 does not apply retroactively. *Jones*, 482 F. Supp. 3d at 976; *Quinn*, 467 F. Supp. 3d at 830–31 (N.D. Cal. 2020); *U.S.A. v. Defendant(s)*, No. 2:99-CR-00257-CAS-3, 2020 WL 1864906, at *5–6 (C.D. Cal. Apr. 13, 2020); *United States v. Ngo*, No. 97-CR-3397-GPC, 2021 WL 778660, at *5 (S.D. Cal. Mar. 1, 2021). These courts reasoned that simply because § 403 was not made explicitly retroactive "does not prohibit the court from considering this legislative change in deciding whether to reduce [a defendant's] sentence." *Jones*, 482 F. Supp. 3d at 980; *Quinn*, 467 F. Supp. 3d at 829; *Defendant(s)*, 2020 WL 1864906, at *5–6; *Ngo*, 2021 WL 778660, at *5. These courts decided that "[i]t is not unreasonable for Congress to conclude that not all defendants convicted under §

924(c) should receive new sentences, even while expanding the power of the courts to relieve some defendants of those sentences on a case-by-case basis." *Jones*, 482 F. Supp. 3d at 980 (citing *United States v. Maumau*, No. 08-cr-00758, 2020 WL 806121, at *7 (D. Utah Feb. 18, 2020)); *Quinn*, 467 F. Supp. 3d at 829 (same); *Defendant(s)*, 2020 WL 1864906, at *6 (same). This Court agrees with its sister courts and adopts their reasoning.

With respect to the Government's remaining argument, a growing number of district courts have found "'the drastic reduction in § 924(c) sentences with its elimination of stacking . . . in combination with other circumstances' may 'warrant[] a modification of the defendant's sentence.'" *Defendant(s)*, 2020 WL 1864906, at *6 (citing cases); *United States v. Chan*, No. 96-cr-00094-JSW-13, 2020 WL 1527895, at *5–6 (citing cases); *see also United States v. Lott*, 2020 WL 3058093, at *3 (S.D. Cal. June 8, 2020) ("The revisions in the stacking provisions of § 924(c) can result in a gross disparity between the sentence that a defendant received before the First Step Act and the sentence a defendant would have received after the First Step Act. The resulting disparity is a relevant factor in determining whether extraordinary and compelling reasons may exist to reduce a defendant's sentence). The Fourth Circuit has also found that "courts legitimately may consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair." *United States v. McCoy*, 981 F.3d 271, 285–86 (4th Cir. 2020). This Court agrees that a term of imprisonment 540 months (or 45 years) longer than it would be if Defendant were sentenced today is a sufficiently "extraordinary and compelling" reason to reduce his sentence, especially in conjunction with evidence of Defendant's rehabilitation, detailed further below.

Finally, Defendant notes that Judge Lawrence K. Karlton explicitly stated that he was constrained by the mandatory guidelines and the mandatory stacking provisions of § 924(c). (ECF No. 465 at 6.) At Defendant's sentencing, Judge Karlton stated:

> I sentenced someone in [Defendant's] position, that is a person [who] committed a number of bank robberies and my recollection is that there were some instances of actual violence, I may be wrong about that, but that's my recollection, and I have reasonable confidence in believing that I sentenced those in [Defendant's]

position — or a young man in [Defendant's] position, to something like 20 years. And, of course, he would earn time off for appropriate behavior. And while that was, in my view, a very hefty sentence, it was appropriate and proportionate.

What I am going to do today because Congress has left me no opportunity not to do so this is neither appropriate nor proportionate nor sane. And when what the Court does clearly makes no sense whatsoever, it brings the law into disrepute. *And I truly believe that what I am about to do, a mandate of Congress, and having no discretion, brings the law into disrepute.* It serves no possible legitimate purpose, whether punitive, rehabilitative, whatever purpose the criminal law serves.

We all recognize that Congress has shifted the focus from rehabilitation — not that we ever actually did that, but we pretended to — to punishment. But punishment is different than retribution. Punishment is supposed to serve some purpose. We say that punishment has a deterrent effect. But when the law manifests its blood vengeance, it loses respect.

Finally, I have to note that these kinds of sentences fill the prisons with young men who have no hope. And I can conceive of nothing more seriously dangerous to those that society charges with protection, that is the prison guards, than a bunch of young men who are without hope whatsoever.

But that's what I have been charged to do, and that is what I must do under my oath. And I will do my duty.

(ECF No. 465-1 at 6–7 (emphasis added).)

Based on the foregoing and in light of the First Step Act's change to the calculation of § 924(c) sentences, the Court finds extraordinary and compelling reasons exist for a sentence reduction.

        C.      Continuing Danger

To be eligible for compassionate release, Defendant must demonstrate that he is "not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). The Ninth Circuit recently clarified, "[t]his dangerousness finding is not statutorily required under 18 U.S.C. § 3582(c)(1)(A)(i), but [it] is part of the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13(2)." *Aruda*, 2021 WL 1307884, at *2. The Court does not consider Defendant's dangerousness to be a relevant factor in the instant case.

///

7

The Government argues that Defendant "does not acknowledge or grapple with the undeniable seriousness and dangerousness of his criminal conduct, including the four armed bank robberies for which he was convicted." (ECF No. 468 at 12.) The Government contends that Defendant admitted he was a "'South Side' gang member at the time of his robberies and showed wanton disregard for the safety of his victims by pointing his firearm at them and, in one case, binding an employee's hands with duct tape." (*Id.*) The Government also notes Defendant does not have a spotless disciplinary record. (*Id.* at 13.)

Despite the Government's arguments, the Court is not persuaded that Defendant is a continuing danger to the community. In his reply brief, Defendant asserts he has not admitted what the Government contends and "[h]e gave no statement regarding the offense conduct to probation." (ECF No. 469 at 9.) Defendant notes the presentence report ("PSR") contains no mention of his membership in any gang in connection to the offense conduct, nor any mention of duct tape used by anyone to bind a bank employee's hands. (*Id.*)

Defendant's actions since the start of his incarceration show that he has taken advantage of rehabilitation programs that have been offered to him. (ECF No. 465 at 9.) Defendant notes he has "completed more than 1,400 hours of programming, many of [which] covered vocational trades," "obtained his GED in 2001, shortly after coming to prison," and "completed classes from Lassen Community College in math and sociology." (*Id.* at 9–10.) Defendant states he is "most proud of his participation in the Vision Program," which has "afforded prisoners the opportunity to reach out to at-risk youth[] to relay their stories — the bad choices, the hurt they caused their families, and the regret they have suffered." (*Id.* at 10.) BOP staff note that he was "a 'key member' of this program and desires to continue reaching out to at-risk youth in the community, if given the chance to be released." (*Id.* (citing ECF No. 465-4).)

Defendant admits he has had one minor disciplinary incident in his 16 years of life in prison for "refusing to program" after his father had just died. (*Id.*) Defendant "requested to be taken to the [Special Housing Unit]," as it was difficult for him to deal with not only the stress of prison life, but also the grief, pain, and frustration. (*Id.*)

///

The Court finds particularly persuasive the nine letters from BOP officials attesting to Defendant's character, which Defendant correctly notes point out that he "is deserving of a second chance at life outside of prison." (*Id.*; *see also* ECF No. 465-4.) Lieutenant C. Ricciardi, who supervised Defendant for seven years, noted:

> In regards to [Defendant's] character, he has proven to be a "model" inmate. He is eager to assist with work details when called upon. He has a positive attitude, and remains a positive influence on other inmates. Although this is expected of all inmates, sadly, it is one, which is not commonly adhered.
>
> [Defendant], like many of us, has made mistakes in life, but it has been made clear to me, he has learned from his mistakes. I believe if he was to return to society, he would do so without further incidents. In the seven (7) years, I have been responsible for supervising him[,] he has grown as a human being and has displayed the effort and attitude it would take, to be a productive member of society. These changes do not happen overnight and I am sure his personal growth began long before our paths crossed.

(ECF No. 465-4 at 2.) Material Handler Supervisor Steven Doyle, who knew Defendant at two different prisons over an eight-year period, noted: "[Defendant] has been very remorseful for his decisions. He has been a model inmate even while faced with adversity. I have never been compelled to write a letter in regards to an inmate[']s sentence reduction, but I do believe that [Defendant] is deserving of another chance. (*Id.* at 3.) Senior Office Specialist O. Pringle, who had known Defendant for approximately eight years, mentioned Defendant was an Assistant Pastor from 2008–2010, was in the Honor Unit from 2009–2010 (which required they "not receive an incident report for 18 months and [Defendant] has not received an incident in 21 years"), and taught classes in the recreation department for five years. (*Id.* at 10.)

Furthermore, the PSR indicates that Defendant does not have any criminal history other than the instant crime and was only a teenager at the time of the crimes. Based on these considerations, the Court finds Defendant has shown that he no longer poses a danger to the community.

### D. Section 3553(a) Factors

Finally, the Court must consider the § 3553(a) factors before granting compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A). Section 3553(a) "entrusts courts with imposing

sentences 'sufficient but not greater than necessary,' and emphasizes 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Quinn*, 467 F. Supp. 3d at 831 (citing 18 U.S.C. § 3553(a)(6)). Here, forcing Defendant to serve the remainder of his 867-month sentence "would be to enforce a sentence that, by modern standards, is 'greater than necessary.'" *Id.* The history and characteristics of the defendant additionally weigh in favor of a time served sentence. As noted previously, Defendant has availed himself of numerous resources in prison, has had only one minor disciplinary incident, and was a teenager at the time he committed the crimes. The Court believes the approximately 288 months Defendant has spent in prison constitutes a just punishment for his criminal offenses and is sufficient to deter such conduct in the future and protect the public from further crimes. Put simply, keeping Defendant imprisoned longer would be punitive without improving upon the purposes of sentencing and would "sanction the very sort of 'unwarranted sentence disparities' for similar conduct that Congress tasked the courts with avoiding." *Id.*

### E. Victims' Rights

The Government argues that if the Court considers granting Defendant's motion, "then all statutory victims should be afforded a right to be heard." (ECF No. 468 at 13 (citing 18 U.S.C. § 3771(a)(4) ("A crime victim has . . . [t]he right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole hearing.")).) Defendant contends that § 3771 "does not require victim notification . . . unless the proceedings will include a public hearing in open court." (ECF No. 469 at 14–15 (citing *United States v. Ebbers*, 432 F. Supp. 3d 421 (S.D. N.Y. 2020); *United States v. Burkholder*, 590 F.3d 1071, 1075 (9th Cir. 2010); *Kenna v. U.S. Dist. Court for Cent. Dist. Cal.*, 435 F.3d 1011, 1014–15 (9th Cir. 2006)).) Defendant is correct that "the Ninth Circuit has construed 'public proceeding' in [§] 3771(a)(4) to be synonymous with a live court proceeding," as "Congress did not create any separate right to be heard when a decision on a motion for compassionate release is made based only on written presentations of the parties." *Ebbers*, 432 F. Supp. 3d at 425; *Burkholder*, 590 F.3d at 1075; *Kenna*, 435 F.3d at 1015. Even if victims were afforded an opportunity to be heard, the

Government concedes the Victim-Witness Coordinator of the U.S. Attorney's Office has thus far been unable to contact the victims identified in the Victim Notification System based on "challenges locating current contact information" due to the passage of time. (*See* ECF No. 468 at 14.)

In sum, Defendant has shown extraordinary and compelling reasons for a sentence reduction. The Court also finds Defendant is not a danger to the community and the § 3553(a) factors support his release.

### III. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant's Motion for Compassionate Release. (ECF No. 465.) Accordingly, the Court modifies Defendant's sentence of imprisonment to time served followed by the 60-month term of supervised release imposed in the previous sentence. (*See* ECF No. 368 at 4.) The Government shall serve a copy of this Order on the warden at FCI Mendota forthwith. Defendant shall be released only after all release plans are in place.

IT IS SO ORDERED.

DATED: May 17, 2021

Troy L. Nunley
United States District Judge